GEORGE E. LILLIE, Appellee, v. MINNIE S. OWEN and others, Appellants.

**Trusts:** EVIDENCE: SUFFICIENCY. Where one holds the legal title to property it requires a clear and satisfactory showing to justify the court in decreeing that the property is held in trust. In this action to partition real estate in which plaintiff claimed to own one-half absolutely and to hold the other one-half in trust, the evidence is held insufficient to sustain defendant's claim that the entire property was held by plaintiff as trustee in a resulting trust.

*Appeal from Linn District Court.*—HON. F. O. ELLISON, Judge.

TUESDAY, MAY 3, 1910.

ACTION in equity for partition of real estate. Decree as prayed, and defendants appeal.—*Affirmed.*

*Deacon, Good, Sargent & Spangler* and *Jamison, Smyth & Hann,* for appellants.

*Voris & Haas, James M. Gray,* and *Barnes & Chamberlain,* for appellee.

WEAVER, J.—Stated in brief, the petition alleges that plaintiff is the holder of the legal title to lots Nos. 3 and 4 in block No. 11 in Daniel's addition to the town of Marion; that he is the absolute owner of an undivided one-half of said property; and that he took and now holds the title to the other undivided one-half thereof in trust for Luther P. Owen, who has since died testate devising all his estate and property to his children, Hazeltine Owen and Preston Owen, and naming Martha A. Elliott and Owen N. Elliott as executors of his will and trustees of the estate for the benefit of his said children. It is also alleged that Minnie S. Owen, the divorced wife of the deceased and mother of said devisees, is their duly appointed guardian, and that she makes some claim to or upon said property. All said persons are made defendants, and plaintiff asks that their interests in said property may be confirmed as alleged by him, and that partition be decreed accordingly. Hazeltine Owen and Preston Owen by their guardian answer denying that the plaintiff is the owner in his own right of any part or interest in said property, and allege that he took the legal title to the same and to all of it in trust for Luther P. Owen in his lifetime, and now holds it in like trust for the devisees under the will. Minnie S. Owen disclaims any title or interest in the property except such as she may have in her representative capacity as guardian for her children. The executors and trustees answer denying any knowledge of the facts and asking for proof of the matters in issue. The district court upon consideration of the evidence presented on the trial found for the plaintiff, confirmed his title to a half interest in the lots, and ordered partition on that basis. The guardian appeals on behalf of her wards, but the executors and trustees do not join therein.

It is the claim of the appellants, and there is evidence tending to show, that the lots in controversy were formerly owned by one Daniels, or Daniels & Co., who became bank-

rupts; that in the settlement of the business these lots were turned over to one C. M. Hollis in consideration of the cancellation of certain claims held by him and the payment of about $152 in money; that Luther P. Owen furnished the money, aggregating about $700, with which to consummate this transaction, and by virtue of an arrangement between him and Hollis became the purchaser and owner of the lots, but at his request the title was taken in the name of Lillie, who was his brother-in-law. When purchased the lots were unimproved, and for several years were put to no use except as pasture for horses owned by Owen. In the year 1901 four cottages were erected on the lots. Owen was the person actively engaged in making the contracts and paying the money thereon, but took receipts for payments as being made by "George E. Lillie, per L. P. Owen." He also collected the rents on the cottages after their construction and did other acts of ownership which we will not attempt to set out in detail. On the other hand, Lillie swears that he himself paid to Hollis the purchase price of lots, $720, and paid the taxes thereon from year to year. There is other evidence tending to show acts of ownership on his part in the way of repairs on the buildings, payment of water rents, and other particulars. It also appears that, in the divorce proceedings between Owen and wife in the year 1905, the matter of the ownership of these lots became the subject of investigation, that Owen then alleged that he owned an undivided half thereof, and made a sworn statement specifically denying that he had any other or greater interest therein.

There is more or less corroboration of the claims asserted on either side; but we have given enough to show the general nature of the case as made by the contending parties. The death of both Owen and Hollis leaves us with but little competent direct evidence of the circumstances under which the title to the property was acquired, and very much of the record is made by proof of matters

which is little better than hearsay, or at best collateral circumstances which are not inconsistent with the truth of either contention. The legal title being found in the appellee, it requires a clear and satisfactory showing to justify the court in decreeing it to be held in trust merely. *Murphy v. Hanscome,* 76 Iowa, 192; *Cunningham v. Cunningham,* 125 Iowa, 681. It is true that, if it be clearly shown that Owen paid Hollis the purchase money and caused the title to be taken in the name of appellee, the latter would ordinarily be held as the trustee of a resulting trust; but the evidence of such payment is neither clear nor satisfactory. The best that can be said of the case made by the guardian is that the facts shown by her are consistent with the theory that Luther P. Owen was the beneficial owner of the entire property, but to justify a decree impeaching the title upon circumstantial evidence the showing, as we have said, should be clearly inconsistent with the appellee's ownership in his own right. Indeed, we may take it for granted that Mrs. Owen does not desire the court to decree the title to be in her wards at the price of convicting her former husband and the dead father of her children of bald perjury, except upon the most convicting proof. Such a showing is not made by the record before us.

Considerable evidence on either side has been made the subject of objection either as to its competency or the competency of the witnesses; but we think it unnecessary to enter upon a consideration of the questions thus raised, for, if we were to hold the appellant's position in each instance to be correct, we are of the opinion that the record would still fail to justify any other conclusion than the one reached by the trial court. The issue is properly one of fact, and, holding as we do that the trial court correctly decided it, no further discussion is required.

The decree appealed from is *affirmed.*