F. H. MALLEY, Appellant, v. P. F. MALLEY, Appellee.

|121|237|
|126|178|

**Trusts:** ESTABLISHMENT OF: TITLE IN THIRD PERSON: EVIDENCE.
Where the legal title of land has stood for many years in the
name of one, unquestioned, the establishment by parole evi-
dence of a resulting trust for the benefit of another over the
presumption in favor of the legal title must be by clear and
convincing testimony, and if the evidence is consistent with
any reasonable theory which will allow the legal title to stand
no trust will be declared.

| 121 | 237 |
| 139 | 57 |
| 139 | 162 |
| f141 | 314 |

*Appeal from Polk District Court.*—HON. A. H. McVEY,
Judge.

MONDAY, OCTOBER 12, 1903.

ACTION to establish and quiet plaintiff's title to an
undivided seven-tenths of an eighty-acre tract of land in
Polk county, Iowa, and for a partition accordingly. The
district court denied the relief asked, and plaintiff ap-
peals. — *Affirmed.*

*E. P. Hudson* and *W. D. Evans* for appellant.

*Brennan & Brennan* for appellee.

WEAVER, J.—In the year 1864, Francis Malley and
Catherine Elizabeth Malley his wife, being about to separ-
ate, united in conveying certain lands in severalty to
their children Fred H. Malley (plaintiff herein), Mary
Malley, William Edwin Malley, John Malley, and Paul
F. Malley, defendant herein. Another child, Louisa

Schlenker, appears to have been previously provided for. The conveyances to plaintiff and to his sister Mary were made subject to a life estate in their mother, Catherine, and the conveyances to William Edwin, John, and Paul were made subject to a life estate in their father, Francis Malley. In the year 1865 plaintiff, with his sister and mother, made sale and conveyance of the lands thus obtained by them to one Troeger. The price received for said lands and the manner of its division between the grantors is a matter of dispute. Soon after this transaction the parties moved to Polk county, where some four hundred and eight acres of land, consisting of three hundred and twenty acres of farm land and eighty-eight acres of timber, were purchased. The title to one eighty-acre tract of farm land (being the tract now in controversy), costing $1,200, and twenty-two acres of timber, costing $325, was taken in the name of the mother, and the title to other similar tracts was taken by plaintiff, his sister Mary, and Mrs. Schlenker in severalty. The mother, with her younger children, John, William E., and Paul F., took up her home on the land conveyed to her, and occupied it until the year 1898, when she died testate, devising her entire estate to Paul F., subject to the payment by him of the sum of $600 to the plaintiff and the further sum of $1,500 to William E. Malley. The son John Malley died intestate in 1871, unmarried, and without children. Mary Malley, then Liebenstine, a widow, and without children, died testate in 1873, devising to her brothers and sisters including plaintiff, by specific description, the one hundred and two acres of land to which she held the title and making no mention or claim of any interest in the land held by her mother. Thus far there is little or no dispute in the record. Plaintiff's claim is to the effect that he negotiated the purchase of the lands in Polk county, and that the $1,200 paid for the eighty-acre tract conveyed to his mother was furnished one-half by himself

and one-half by his sister Mary, and that his mother con-
tributed nothing whatever to said purchase except the
sum of $325, paid for the twenty-two acres of timber land.
This, he claims, was the voluntary act of his sister and him-
self, without any agreement with or request from their
mother, and for the purpose of securing to her the use and
benefit of the property for life, and with no intent or
purpose of vesting her with the absolute ownership of the
fee.   He asserts, therefore, that, save as to her life estate,
Catherine Elizabeth Malley held the title to said land in
trust for the joint benefit of his sister Mary and himself,
and, the life estate having lapsed, he is entitled to be
declared the undisputed owner of the undivided one-half
of the property.   In his original petition plaintiff alleged
that by the will of his deceased sister, Mary, he became
the owner of one-fifth part of the other undivided one-half
of the land; but this claim he afterward abandoned, and
in argument advances the proposition that, while Mary
was the equitable owner of the undivided one-half of the
land, the same was not devised by her will, and passed as
intestate property to her mother, through whose will it
passed to the defendant.

The testimony makes it reasonably certain that plain-
tiff advanced or paid the sum of $600 upon the purchase
price of the land, but it is by no means so clear that the
transaction was of a nature to create a resulting trust in
his favor.   The general proposition that where one pur-
chases and pays for land, taking the title in the name of
a third person, the grantee is deemed to hold such title in
trust for the real purchaser, is well settled.   *Cotton v.
Wood*, 25 Iowa, 43; *Zunkel v. Colson*, 109 Iowa, 695; *Wil-
liams v. Williams*, 108 Iowa, 91.   But the presumption in
favor of the legal title, especially one which has stood
unquestioned and undisturbed for many years, is so nearly
conclusive that something more than a slight preponder-
ance of the testimony is required to establish a trust.   We

have said: "It is well settled that one who asks to establish a resulting trust by parol evidence, and ingraft the same on the legal title, must do so by evidence that is clear, certain and practically overwhelming." *Andrews v. Andrews*, 114 Iowa, 524; *Murphy v. Hanscome*, 76 Iowa, 192; *Suderland v. Suderland*, 19 Iowa, 325. It follows, therefore, if the testimony, when fairly construed, is consistent with any reasonable theory which will allow the legal title to stand, no trust will be declared. Without extending this opinion to include a minute review of the record, we have to say that, assuming it to be proven that plaintiff supplied $600 of the purchase price of the land, the testimony as a whole, and the conceded circumstances surrounding the parties, are, to our minds, entirely consistent with the theory that the transaction was in the nature of a loan or accommodation to his mother, to be repaid or returned by her at some later date, when she should be able to do so. The conduct of the mother indicates that such was her understanding of the matter. For thirty-two years she lived upon, managed, and controlled the property as her own, and placed improvements thereon at an expense of $2,000 or more. During all that long period, so far as appears, plaintiff never asserted his ownership, or sought to have the alleged trust legally established. If it was the plaintiff's purpose to invest his mother with a life estate only, there was no necessity, nor is any adequate reason suggested, for making her a trustee of the fee. Indeed, it is not easy to imagine a state of circumstances under which the grantee of the legal title to land may be held to be a life tenant only, and at the same time be chargeable with a resulting trust in the fee for the benefit of the remainderman. But, conceding that such an incongruous union of estates in the same person is possible, the evidence is not sufficiently strong or convincing to require such a finding in the case here presented.

The judgment of the district court is AFFIRMED.